## DEARING *vs*. MOORE.

1. IN trespass to recover damages for the battery of a slave, plaintiff introduced a witness who testified, that defendant and one R. were chasing the slave as a runaway with a pack of trained dogs belonging to defendant; that he heard the report of a gun, or pistol, in the direction the dogs were trailing, and when he reached a certain fence the defendant came up to him from a swamp on the opposite side of the field, "and told him that he came up with the negro in the field on horseback, that the negro turned on him with a large stick, that he retreated to keep out of the way of the negro, who said he would die before he would be taken, that he went to R. and got his pistol, and pursued the negro to the swamp, and came up near to him, and shot him just as the negro was turning on him :" *Held*, that defendant's declaration to said R. at the time he got the pistol and pursued the slave, in explanation thereof, were competent evidence for him as a part of the *res gestæ*.

APPEAL from the Circuit Court of Tuskaloosa.
Tried before the Hon. EDMUND W. PETTUS.

TRESPASS VI ET ARMIS by Alex. B. Dearing against John C. Moore, to recover damages for an assault and battery committed by defendant upon a slave named Bob, the property of the plaintiff.

" On the trial of the cause," as the plaintiff's bill of exceptions states, "the plaintiff introduced James M. Williams as a witness, who stated, that on the day plaintiff's said slave was shot, he was in his plantation ; that the dogs commenced a sharp barking in a thicket near by ; that he went to the

place, and discovered the camp of what he took to be run-away slaves, but saw no slaves ; that he then went, and got the defendant, who had a pack of dogs trained to run slaves ; that they took them to the camp, and the dogs took a trail, and followed on to near Kribb's factory, where they caught one negro man ; that defendant put the negro thus caught into the possession of witness, and gave witness his pistol ; that they learned from this negro that there was an-other with him, and that they had separated at a place men-tioned by him ; that they took the negro to show them the place where he had separated from the other, and the dogs there took the trail, and pushed through the woods to the field of Mr. Comegys ; that defendant, and a Mr. Robinson who was with him, followed on the trail after the dogs, and wit-ness went with said slave to the fence of the said field ; that on his way there he heard the report of a gun, or pistol, in the direction the dogs had taken on the trail ; that when he got to the fence of the field, defendant came to him from the swamp on the opposite side of the field, and told him that he came up with the negro in the field on horseback, and that the negro turned on him with a large stick, and that he re-treated to keep out of the way of the said negro, who said he would die before he would be taken ; that defendant further told him that he went to said Robinson, and got his pistol, and pursued the negro to the swamp,—that the swamp was a bad thicket of vines and briers, and *mirey* ; that he hitched his horse, and pursued the negro into the swamp, and came up near to him, and shot him just as the negro was turning on him ; that they brought the said negro out of the swamp, put him in a cart, and carried him to plaintiff, and that plaintiff sent for a physician."

The plaintiff then introduced the testimony of physicians, as to the nature and character of the wound which the slave had received, and proved that he had died about a year after-wards ; also, the value of the slave, his hire, the trouble and expense of waiting on him, &c. The defendant then intro-duced one Dr. Leland as a witness, whose testimony tended to show that the death of the slave might have resulted from the improper use of surgical instruments. He then introduced said Robinson as a witness, " who stated, that he came to the

said field while the said slave was pursuing defendant with a large stick ; that when the slave saw him, he turned and fled towards the swamp ; that defendant got his pistol, and followed the slave to the swamp. Witness was proceeding to state what defendant told him, as he started to pursue said slave to the swamp, a short time before the slave was shot. Thereupon plaintiff objected to his stating what defendant so told him, but the court overruled the objection ; to which ruling of the court the plaintiff excepted. Witness thereupon stated, that defendant told him not to follow the slave into the swamp, that he said he would not be taken—that he would die before he would be taken ; to which declarations of defendant plaintiff objected, but his objection was overruled, and he excepted."

The admission of these declarations is the only error assigned.

E. W. PECK, for the appellant :

Although all that the appellee stated to the witness Williams, as well that which made for him as that which made against him, was properly received as evidence ; yet it did not follow, that the jury would give the same credit to both : they might believe what he stated against himself, and disbelieve what he stated in his own favor.—1 Greenl. Ev. § 201, and cases there cited. It often happens, as in this instance, that a plaintiff can only prove his case by introducing the declarations of the defendant ; and where such declarations are made after the defendant has discovered his danger, it is reasonable to expect that he will make them as much in his favor as he can ; and if the truth is not utterly perverted, it is almost sure to be highly colored, and hence the reason of the foregoing rule. The appellee's counsel, aware of this rule, and fearing that the jury might be inclined to doubt the truth of all the appellee had said to exculpate himself, pressed the admissibility of his declarations to Robinson, to fortify himself against and to avoid the effects of this rule ; and the court, in permitting this to be done, against appellant's objection, fell into error. It was permitting the defendant to strengthen his defence by his own declarations, or (in other words) to make evidence for himself,—Hooper

Dearing v. Moore.

v. Edwards, 20 Ala. 530, and cases there cited ; 5 Taunt. (top p.) 245.

W. Moody, *contra*, contended that the evidence was admissible as part of the *res gestæ*, and cited the following cases : Pitts v. Burroughs, 6 Ala. 735 ; Williams v. Shackelford, 16 *ib.* 318 ; Yarborough v. Moss, 9 *ib.* 382 ; Hooper v. Edwards, 20 *ib.* 528 ; Jones v. Nirdlinger, *ib.* 490 ; Donnell v. Thompson, 13 *ib.* 440 ; Chambers v. The State, at this term.

RICE, J.—In an action of trespass for the battery of a slave, the jury are not confined to the actual injury sustained by the master, but may give vindictive damages. The master has the right to prove circumstances of aggravation. The defendant has the right to prove any matter which constitutes a bar to the action, and also any matter which the law permits the jury to consider in mitigation of damages.—Wheat v. Lowe, 7 Ala. R. 349 ; Gillian v. Senter, 9 Ala. R. 395 ; Mitchell v. Billingsley, 17 Ala. R. 391 ; Handy v. Johnson, 5 Maryland R. 459.

The plaintiff, in the present case, did not confine his evidence to the mere fact that the defendant shot his slave : he went beyond this, and gave in evidence circumstances which, if unexplained, might well have been regarded as matters of aggravation. Amongst other things, he proved by his witness Williams, that defendant kept a pack of dogs trained to run slaves ; that defendant and one Robinson, with these dogs, were chasing plaintiff's slave (as a runaway) ; that the witness heard the report of a gun, or pistol, in the direction the dogs were trailing ; that when he got to the fence of a certain field, the defendant came to him from the swamp on the opposite side of the field, "and told him he came up with the negro in the field on horseback, and that the negro turned on him with a large stick, and that he retreated to keep out of the way of said negro, who said he would die before he would be taken ; that defendant further told him, he went to said Robinson, and got his pistol, and pursued the negro to the swamp, and came up near to him, and shot him just as the negro was turning on him."

After the plaintiff had adduced this evidence, and rested

his case, defendant "introduced the said Robinson, who stated that he came to the said field, while the said slave was pursuing the defendant with a large stick; that when the slave saw him, he turned and fled towards the swamp. Witness was proceeding to state what defendant told witness as he started to pursue the said slave to the swamp, a short time before the slave was shot. Thereupon the plaintiff objected to his stating what defendant so told him, but the court overruled the objection; to which ruling of the court the plaintiff excepted. Witness thereupon stated, that defendant told him not to follow the slave into the swamp, that he said he would not be taken, that he would die before he would be taken; to which declarations of defendant plaintiff objected, and his objection was overruled, and plaintiff excepted."

If these declarations of the defendant were mere naked declarations, they were improperly admitted; but if they formed part of the *res gestæ*, they were properly received. Declarations made by the actor at the time an act is done, and which explain the motive, design, or intent of its performance, and so harmonize with it as obviously to constitute one transaction, may be given in evidence as part of the *res gestæ*, whenever the nature of the act becomes a material question.—2 Phillips on Ev. (edition of 1839) pp. 585 to 600; Pitts v. Burroughs, 6 Ala. R. 733; Enos v. Tuttle, 3 Conn. R. 250.

It was not unlawful in defendant, after the manifestation of dire rebellion on the part of the runaway slave, to get a pistol and pursue him, for the purpose of apprehending him. But the plaintiff proved this act of getting the pistol and pursuing the slave to the swamp, and that it occurred a very short time before the defendant shot the slave. The nature of this act—the motive, or intent for thus getting the pistol and pursuing the slave—thus became a material inquiry in the cause; for, if that act were left unexplained, it might be used and treated as matter in aggravation of damages, because it might authorize the inference that the shooting of the slave, which occurred very soon afterwards, was a premeditated, cruel, and unnecessary act, unrelieved by the existence of a good motive, or other palliating circumstance. It was, therefore, important to defendant to repel any such inference; and the authorities make it clear, that his declarations at the time he got the pis-

tol from Robinson and pursued the slave, in explanation thereof, were competent evidence as part of the *res gestæ*.—2 Phillips on Ev., *supra*; 'Yarborough v. Moss, 9 Ala. R. 382; Pitts v. Burroughs, 6 Ala. R. 733; Williams v. Shackelford, 16 Ala. R. 318; 1 Greenl. Ev. §§ 108 to 110; Allen v. Duncan, 11 Pick. R. 308; Rice v. Bancroft, 11 Pick. R. 469.

There is no error in the ruling of the court below, and its judgment is affirmed.